DUDLEY TALBOTT, Respondent, v. GREAT WESTERN PLASTER COMPANY et al., Appellant.

**Kansas City Court of Appeals, February 4, 1901.**

1. **Malicious Attachment: MALICE: PROBABLE CAUSE: INSTRUCTION: EVIDENCE.** In an action to recover damages for malicious attachment, the plaintiff must show that the action was instituted maliciously and without probable cause, and he can not recover upon proof only of the want of the latter; and an instruction, set out in the opinion, authorizing a recovery if the suit was instituted by reason of ill will or without probable cause, is erroneous and is also defective because it uses "wrongfully" instead of "maliciously" and is without evidence to support it.

2. **———: ———: ———: INFERENCE: INSTRUCTION.** Want of probable cause does not necessarily establish the existence of malice and the jury should not be so instructed unless the attendant facts warranted the inference.

3. **Attachment: CREDITOR'S RIGHT: DAMAGES.** The law affords the creditor the remedy by attachment and he should not, when he acts in good faith, upon insufficient cause, be held farther than the evidence shows his debtor has been actually damaged.

4. **Partnership: APPLYING FIRM ASSETS TO INDIVIDUAL DEBT: INSTRUCTION.** One partner, without the consent of his co-partner, can not apply the partnership property to the payment of his individual debt, even though there be sufficient partnership assets remaining to discharge the firm's debts. Instruction condemned.

Appeal from the Jackson Circuit Court.—*Hon. W. B. Teasdale*, Special Judge.

REVERSED AND REMANDED.

*William C. Forsee* for appellants.

(1) Instruction number two, given for respondent, is reversibly erroneous. (a) The first three lines are not only a mere abstraction, but an incorrect one. As applied to this class of actions, there is no such thing as malice in law. Its existence is a fact to be established as any other fact is established. True, in some instances the jury may infer its existence from other established facts, but in no case is it necessarily inferable. Grant v. Reinhart, 33 Mo. App. 74, 82, 84; Sharpe v. Johnston, 59 Mo. 575; Vansickle v. Brown, 68 Mo. 438. (2) Besides, malice, as applied to a case of this character, means something more than "ill will against a person." Witascheck v. Glass, 46 Mo. App. 209; Lyddon v. Dose, 81 Mo. App. 64; Peck v. Chouteau, 91 Mo. 138, 148; Sharpe v. Johnston, 59 Mo. 557; Alexander v. Harrison, 38 Mo. 265, 266; State v. Weedon, 133 Mo. 70; Goetz v. Ambs, 27 Mo. 28, 33; 2 Rapalje & L. Law Dict. 784; Vansickle v. Brown, 68 Mo. 627, 638. (3) This instruction declares that "malice in law" means "a wrongful act done intentionally." As applied to this case, this is wholly incorrect. Authorities, *supra.* (4) The last ten lines of this instruction directs a verdict for plaintiff. (5) Because it is well settled that no recovery can be had, in such cases, except upon proof of malice and want of probable cause. Both must concur. Sharpe v. Johnston, 59 Mo. 557; Peck v. Chouteau, 91 Mo. 138, 148; Witascheck v. Glass, 46 Mo. App. 209; Scovill v. Glassner, 79 Mo. 449; Grant v. Reinhart, 33 Mo. App. 74. (6) Instruction number three given for respondent is reversibly erroneous. Sharpe v. Johnston, 59 Mo. l. c. 576; Grant v. Reinhart, 33 Mo. App. l. c. 83; Alexander v. Harrison, 38 Mo. 258, 265; Barron v. Mason, 31 Vt. 189, 202. (7) The refusal of the court to give instructions 1, 2, 4, 9 and 10, and an unnumbered instruction, was reversibly erroneous. Lyddon v. Dose, 81 Mo. App. 64; Authorities, *supra;* 1 Bates on Part., sec. 566; R. S. 1899, sec. 3398; Phelps v. McNeely, 66 Mo. 554; Hilliker v. Francisco,

65 Mo. 598; Kitchen v. Reinsky, 42 Mo. 427; Price v. Hunt, 59 Mo. 258; Flanagan v. Alexander, 50 Mo. 50; Forney v. Adams, 74 Mo. 138; Priest v. Chouteau, 85 Mo. 399.

*A. F. Evans* for respondent.

(1) Where there is any evidence in the case from which the jury might reasonably infer the existence of the fact to be established, the court will not interfere. Moody v. Deutsch, 85 Mo. 237; Scovill v. Glasner, 79 Mo. 449; Kelly v. Railroad, 70 Mo. 604. (2) Loss of time necessarily caused to plaintiff by the attachment proceedings, cost of preparing for trial, and a reasonable attorney's fee in obtaining a dissolution, of the attachment, may be covered as actual damages in this action for a wrongful attachment without proof of malice. Fry v. Estes, 52 Mo. App. 1; State ex rel. v. Coombs, 67 Mo. App. 199; Alexander v. Harrison, 38 Mo. 258; Doll v. Cooper, 9 Lea. 576; Drug Co. v. Wafford, 53 S. W. Rep. 243; McLaughlin v. Davis, 14 Kan. 168; Kirksey v. Jones, 7 Ala. 622; Reed v. Samuels, 22 Texas 114; State to use v. Thomas, 19 Mo. 613; Donnell v. Jones, 17 Ala. 689. (3) A party is entitled to an attachment only when certain facts exist. If those facts did not exist, the attachment was wrongfully issued, and the party causing it to issue is liable for all damages actually sustained. Nor is it necessary in such a case to sue on the bond. R. S. 1899, sec. 366; McLaughlin v. Davis, 14 Kan. 168; Fry v. Estes, 52 Mo. App. 1. (4) Where the elements of malice, wantonness, oppression or bad motive characterize the act complained of, damages to reputation, etc., and exemplary damages may be recovered. Witascheck v. Glass, 46 Mo. App. 209; Walser v. Thies, 56 Mo. 89; Gregory v. Chambers, 78 Mo. 294; Mix v. Kepner, 81 Mo. 96; Cottrell v. Russell, 21 Mo. App. 1; Sutherland on Dam. 496; Sedg. on Dam. (7 Ed.), 186; Isham v. Dow, 45 L. R. A. 87; Fry v. Estes, 52 Mo.

App. 1; State ex rel. v. Hill, 60 Mo. App. 130; Cody v. Case, 45 Kan. 733. (5) The term malice imports, according to its legal signification, nothing more than that the act is willful or intentional and, when used to qualify the character of a trespass, it is only employed to distinguish it from that class of injuries which one person may inflict upon another, without intention to do harm, but for which he is responsible, because the act is not unavoidable. Goetz v. Ambs, 27 Mo. 28; Cooley on Torts, s. p. 185 and 209; Newell on Mal. Pros., 247, secs. 13, 14; Newell on Mal. Pros. 237, secs. 2, 3; Trauerman v. Lippincott, 39 Mo. App. 481; Franz v. Hiltebrand, 45 Mo. 721; Bruce v. Ulery, 79 Mo. 322. (6) "Malice in law" and "malice in fact"—express malice and implied malice, defined. Newell on Mal. Pros. 237, sec. 2; Newell on Mal. Pros. 238, sec. 4; Hill v. Palm, 38 Mo. 13; Witascheck v. Glass, 46 Mo. App. 209; Buckley v. Knapp, 48 Mo. 152. (7) Malice may be inferred from want of probable cause. Forbes v. Hogman, 75 Va. 168; Wood v. Weir, 5 B. Mon. 544; Walser v. Thies, 56 Mo. 89; Newell on Mal. Pros. 247, sec. 14; Scovill v. Glasner, 79 Mo. 449; Hill v. Palm, 38 Mo. 13. (8) Probable cause is a mixed question of law and fact. . Scovill v. Glasner, 79 Mo. 449; Sharpe v. Johnson, 59 Mo. 557; Moody v. Deutsch, 85 Mo. 237. (9) There may be even probable cause for a suit, but, if, from bad or malicious motives, an oppressive or vexatious litigation is carried on, the party will be responsible. Walser v. Thies, 59 Mo. 89; Alexander v. Harrison, 38 Mo. 258. (10) The evidence objected to was properly admitted. News Co. v. Wilmarth, 33 Kan. 510; Buckley v. Knapp, 48 Mo. 152; Isham v. Dow, 45 L. R. A. 87 and notes.

BROADDUS, J.—This cause was tried in division number two of the Jackson county circuit court on the twenty-ninth day of May, 1899, before W. B. Teasdale, special judge, and

verdict had for the plaintiff for $272.50, from which and the judgment thereon defendants, the Great Western Plaster Company and George A. Ely have appealed; William Weston and Weston Lime & Cement Association having been dismissed before the case was finally submitted to the jury.

The suit is for a wrongful and malicious prosecution of an attachment, without probable cause. It is alleged that on the nineteenth day of July, 1898, the defendants instituted attachment proceedings against plaintiff before Theodore S. Case, justice of the peace; that afterwards a change of venue was taken to J. H. Hawthorne, another justice; that thereafter on the first day of September, 1898, said proceedings were dismissed by the defendants herein; that the plaintiffs in said proceedings for grounds of attachment alleged that the plaintiff herein had fraudulently conveyed and assigned his property and effects, etc., so as to hinder and delay his creditors.

The answer is a general denial and sets up a judgment in favor of the defendant, the Great Western Plaster Company, as a counterclaim against any judgment plaintiff may obtain. There was a trial before a jury and finding for plaintiff for actual damages in the sum stated after allowing defendant's counterclaim. There was a great amount of evidence introduced on the trial, the greater part of which could have little or nothing to do with the issue before the jury. It is sufficient, in order to understand the case properly, to state certain main facts connected with the transaction.

In 1897, the plaintiff and William Weston formed a copartnership in the lime and cement business in Kansas City, Missouri. The firm did some business until in January, 1898, when a corporation was formed under the name of the Weston Lime and Cement Association. This association was organized in pursuance of a written agreement between plaintiff and his partner, William Weston. Some of the property and assets of the former concern went into the new organization.

At the time, however, it is shown that there was about $1,700 due the old concern from its patrons. The plaintiff collected the greater part of this amount, paid some of the debts of the firm; turned some over to one Hill, a creditor, and applied $300 in part payment of his individual note to the First National Bank of Kansas City, and also transferred certain shares he held in the new concern as collateral security for said $1,000 note. It appears that ultimately the partnership was unable to pay its debts. The fact that $300 of the partnership money had been paid out by plaintiff on his note to the bank came to the knowledge of the defendants before the attachment proceedings were begun, but it was not known to them that plaintiff had pledged his shares of stock in the new concern until afterwards. There was some evidence that by reason of the attachment the plaintiff had lost, he thought, somewhat in his credit, and that he paid out $15 to an attorney to defend the attachment suit. In view of the fact that instruction number 2 given in behalf of plaintiff is predicated upon actual malice as contradistinguished from legal malice, I have searched the record to learn what the evidence was in that respect. The search has been fruitless—I could find none upon the part of the defendants now before the court.

The plaintiff, if entitled to recover, must stand upon his proof that the attachment was instituted maliciously and without probable cause. He must show both. He can not recover upon proof only of want of probate cause. See Grant v. Reinhart, 33 Mo. App. 74; Witascheck v. Glass, 46 Mo. App. 209; Sharpe v. Johnson, 59 Mo. 557. An examination of said instruction number 2 given at instance of plaintiff over defendants' objection has omitted to combine the two elements necessary to constitute the charge of malice and probable cause. It reads: "There are two kinds of malice. Malice in fact and malice in law. The former means ill will against a person; the latter a wrongful act done intentionally. If, therefore, the

jury believe from the evidence that the defendants instituted or procured, or caused to be instituted, against the plaintiff the attachment suit as charged in plaintiff's petition, and that defendants were moved thereto by ill will against the plaintiff, or that said attachment suit was instituted, or procured or caused to be instituted, wrongfully, and was without probable cause, the jury must find for the plaintiff."

By this instruction the jury were told that they must find for the plaintiff if the defendants were moved thereto by ill will, or if they found that they instituted the attachment wrongfully and without probable cause. Even if it be conceded that the word "wrongfully" has the same significance as "maliciously," the defect of the preceding part of the instruction would not be cured because the element of probable cause is entirely omitted therein. But it is unnecessary to invoke the aid of the loxicographer and judicial construction to show that the words "wrongfully" and "maliciously" are not synonymous; and the instruction is wrong for another reason: the question of actual malice is submitted to the jury as a basis of recovery, when the record, as has been stated, is barren of any evidence in that respect. The instruction is in the disjunctive form, and would authorize the jury on proof of probable cause alone, or upon proof alone of wrongful institution of the attachment, to find for the plaintiff.

Instruction number 3 reads: "If the jury believe from the evidence that said attachment suit was instituted without probable cause, they may infer therefrom that it was malicious." The proof of want of probable cause does not necessarily establish the existence of malice. If so, the plaintiff has only to prove in a given case want of probable cause and the malice would follow as a legitimate inference. The effect, then, in reality, would be to dispense with all proof outside of proof of want of probable cause to sustain the allegation of malice. But the books do not so hold. See Grant v. Rein-

hart, 33 Mo. App. 83. Judge ROMBAUER in that case uses the following language:

"Malice is not an inference of law from want of probable cause. Malice, however, need not be proved by direct and positive testimony, but may be inferred from the facts which go to establish the want of probable cause, and this is all that is meant when it is said that malice may be inferred from want of probable cause. But the jury are not required to make this inference, and they should not be so instructed that such an inference may be made, unless the facts attending the conduct and determination of the prosecution and those adduced to establish the want of probable cause, are of a character to warrant such an inference."

I have quoted the language of the learned judge for the reason that I do not think the rule could be more clearly and correctly stated. Applying this wholesome rule to the case under consideration I do not think the instruction should have been given.

The practically undisputed facts shown in the case are, that the defendants' concern was justly indebted to the defendant here, the Great Western Plaster Company; that an attempt had been made to collect the debt; that the concern was hard run and slow in paying its debts; and that defendant's agent, George A. Ely, had learned that plaintiff was applying the proceeds of the partnership to the payment of his own private debts without the consent of his co-partner. With the knowledge of all these facts the agent Ely sued out the attachment. Not only that, he consulted a lawyer who, it seems, was familiar with the facts and who advised the proceedings. And further, when he learned that plaintiff had disposed of his shares of stock in the new concern, leaving nothing upon which an attachment could be levied, he dismissed the same. These facts, clearly appearing, seem to me to rebut the idea that the agent Ely caused the attachment to be issued for the purpose

of oppressing or wronging defendant. They do not warrant the inference of malice either express or implied. On the contrary, their tendency is rather to prove the existence of probable cause. In Witascheck v. Glass, 46 Mo. App. 209, Judge SMITH well said, in speaking of the plaintiff, he had the right by law to bring his suit, to have that matter judicially determined subject only if his claim was adjudged false to pay costs of suit, and only such other damages as are allowed by law when property has been wrongfully seized and detained under the process of attachment.

If every creditor whose debt he believes is imperiled by the suspicious conduct of the debtor, is to be subjected to a suit for malicious prosecution, if his attachment fails, then the attachment law would operate often as a menace and not as a protection to his rights. He has the right under the law to assume that if he sues out his attachment for the purpose of securing his debt which he thinks is in jeopardy, that if he fails to sustain it he will only have to pay the actual damages the debtor has sustained and nothing more. The law affords him the remedy, and he should not, when he acts in good faith but upon insufficient cause, be held to answer farther than the evidence shows his debtor has been actually damaged.

Appellant complains of instruction number 7 given by the court of its own motion. It reads: "The court instructs the jury that if it believes from the evidence that prior to the attachment sued out by the defendant, Ely, the plaintiff collected a portion of the accounts due the firm of which he and Weston were the members, and applied three hundred dollars of said money so collected to the payment of a debt which he (Talbott) owed the first National Bank, your verdict must be for the defendants, unless you further find from the evidence that the remaining assets of said firm, at said time, were sufficient to pay off and discharge all the debts owing by said partnership."

The objection to the instruction was well founded. One

partner can not apply the property of the partnership to the payment of his individual debt, without the consent of the other partners. This instruction is given without the qualification of consent of the other partner. All the authorities in this country that I have examined agree upon this rule of law. See Bates on Partnership, sec. 410; Phelps v. McNeely, 66 Mo. 554; Sexton v. Anderson, 95 Mo. 373; Hundley v. Farris, 103 Mo. 78; Reyburn v. Mitchell, 106 Mo. 365; Noble v. Metcalf, 20 Mo. App. 360; Ewart v. Tootle & Co., 50 Mo. App. 322.

All defendants objections to the admission of testimony on the part of plaintiff called to the attention of this court should have been sustained because they were immaterial; but as they were not hurtful, plaintiff could not have been prejudiced thereby. There was much of this kind of evidence introduced.

It is claimed by appellant that the court erred in refusing, on their behalf, instructions 1, 2 and 9. If what has heretofore been said be true, number one of said instructions should have been given as it was in the nature of a demurrer of plaintiff's case, and the same is true in reference to number two. But number nine does not contain the true theory of the case and was properly refused.

Reversed and remanded. All concur.